IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEWELL MORNING STAR FARRIS,

        Plaintiff,                      Civil No. 08-3128-ST

      v.                                FINDINGS AND
                                              RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

STEWART, Magistrate Judge:

      Plaintiff, Jewell Morning Star Farris ("Farris"), seeks judicial review of the Social Security Commissioner's final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 USC §§ 405(g) and 1383(c). For the following reasons, the Commissioner's decision should be AFFIRMED.

1 - FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

Farris applied for SSI on September 14, 2004 (Tr. 108),[1] alleging disability since January 1, 1990, due to "shoulder problems" and bursitis. Tr. 95. The Commissioner denied Farris's application initially and upon reconsideration. Tr. 54-65. An Administrative Law Judge ("ALJ") held a hearing on August 30, 2006 (Tr. 345-72), and found Farris not disabled. Tr. 27-36.

In an undated disposition, the Appeals Council remanded the matter, instructing the ALJ to make further findings. Tr. 44-46. The ALJ held a second hearing on November 6, 2007 (Tr. 373-96), and on May 28, 2008, again found Farris not disabled. Tr. 15-23. The Appeals Council denied review of the ALJ's decision on September 25, 2008, making the ALJ's May 2008 decision the final decision of the Commissioner. Tr. 7-9.

## BACKGROUND

Born in 1960 (Tr. 95), Farris has a tenth-grade education. Tr. 105. She last worked in 1993 as a maid. Tr. 100.

Between April and November 2000, Farris received treatment for a viral illness, dysmenorrhea, and depression Tr. 235-43. In April 2001, a physician assessed left shoulder pain and suspected Farris had a rotator cuff tear with deconditioning and left wrist pain. Tr. 233. Farris had surgery on her left shoulder in June 2001. Tr. 230-31.

In March 2002, treating physician Janey M. Purvis, M.D., stated that Farris had a history of mood disorders and diagnosed chronic pain disorder. Tr. 228. Dr. Purvis performed a

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on February 24, 2009 (docket #11).

comprehensive chronic pain evaluation in April 2002 and diagnosed Farris with chronic pain syndrome secondary to her rotator cuff injury, depression, and deconditioning. Tr. 224-27. Farris also received a chronic pain diagnosis and treatment for her chronic shoulder pain in July and August 2002. Tr. 216, 220.

In 2003, Farris received treatment for an upper respiratory infection, insomnia, and rotator cuff impingement syndrome in her right shoulder. Tr. 210-14. She had surgery on her right shoulder in April 2003. Tr. 211.

In January 2004, treating physician Joyce C. Hollander-Rodriguez, M.D., diagnosed Farris with bilateral lateral epicondylitis, bilateral carpal tunnel syndrome, chronic musculoskeletal pain, and depression. Tr. 207-08. In May 2004, Farris reported increasing pain in her elbows and wrists, and received diagnoses of epicondylitis and carpal tunnel syndrome. Tr. 203-04. Dr. Hollander-Rodriguez continued to diagnose chronic pain syndrome, bilateral carpal tunnel syndrome, abnormal uterine bleeding, and major depressive disorder in August 2004. Tr. 193-95. In October 2004, another treating physician again diagnosed chronic pain syndrome. Tr. 188. On January 14, 2005, Karl C. Wenner, M.D., performed simultaneous bilateral carpal tunnel release procedures. Tr. 245-46.

On March 27, 2005, examining physician Jon G. McKellar, M.D., evaluated Farris for Disability Determination Services ("DDS").[2] Tr. 250. Dr. McKellar assessed post bilateral carpal tunnel release surgery with objectively decreased grip strength, history of chronic low back pain without objective findings by examination or x-ray, bilateral chronic shoulder pain with reduced range of motion, chronic depression, and general deconditioning. Tr. 252. On April 9,

---

[2] DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 USC § 421(a) and 20 CFR § 404.903.

3 - FINDINGS AND RECOMMENDATION

2005, psychologist Gregory A. Cole, Ph.D., performed an evaluation for DDS and assessed major depressive disorder, pain disorder, and cannabis dependence. Tr. 256-61.

Between August 2005 and November 2006, Dr. Hollander-Rodriguez continued to diagnose Farris with a chronic pain disorder, migraine headaches, depression, and insomnia. Tr. 303-07; 324-339. In February and March 2007, Dr. Hollander-Rodriguez added a bipolar diagnosis (Tr. 324-27), and in November 2007, shortly before the record closed, diagnosed epigastric pain. Tr. 341-43.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 CFR § 416.1520; *Bowen v. Yuckert*, 482 US 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 CFR § 416.920(a)(4)(i).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 CFR §§ 416.909; 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR § 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The

claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 CFR § 416.920(e), Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 CFR § 416.920(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work, or that the claimant has no past relevant work, the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 US at 142; *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999); 20 CFR §§ 416.920(a)(4)(v); 416.920(f). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id* at 1100. If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR §§ 416.920(g); 416.966.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Farris had not engaged in any substantial gainful activity since September 14, 2000.

At step two, the ALJ found Farris's bilateral status-post carpal tunnel surgery, bilateral chronic shoulder and elbow pain, depression, high blood pressure, and cannabis dependence to be severe impairments. Tr. 17.

At step three, the ALJ found that these impairments did not meet a listed disorder. After finding Farris "not fully credible" (Tr. 19), the ALJ assessed Farris's RFC as the ability:

> to perform light work . . . except that she would have difficulty standing, walking, or sitting for more than one hour at a time, should not lift or carry over 30 pounds, has no problem hearing or speaking, and, although she does not seem to have a problem with hand dexterity, she has decreased grip strength, so she should not perform forceful grasping or twisting, and should not perform any overhead work. In addition, the claimant should not work around hazards, should not have frequent interactions with the public, and is able to perform simple, routine tasks, but not complex tasks.

Tr. 18.

At step four, the ALJ found that Farris has no past relevant work. Tr. 21.

At step five, the ALJ found that Farris may perform work in the national economy as a basket filler, leather products decorator, and optical goods assembler. Tr. 22. Therefore, the ALJ found Farris not disabled under the Commissioner's regulations at any time through the date of his decision.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004). This court must weigh "both the evidence that supports and detracts" from the ALJ's conclusion. *Magallanes v. Bowen*, 881 F2d 747, 750 (9th Cir 1989). The reviewing court "may

not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record. *Magallanes*, 881 F2d at 750; *see also Batson,* 359 F3d at 1193.

## FINDINGS

### I. Appeals Council Remand Order

Farris first contends that the ALJ failed to comply with the Appeals Council's remand order regarding her credibility under 20 CFR § 416.929 and SSR 96-7p, 1996 WL 374186 (July 2, 1996).

The Appeals Council instructed the ALJ to: (1) allow Farris to submit updated treatment records; (2) give further consideration to evidence submitted by Farris's treating and examining physicians pursuant to 20 CFR § 416.927, SSR 96-2p, 1996 WL 374188 (July 2, 1996), and SSR 96-5p, 1996 WL 374183 (July 2, 1996); (3) further evaluate Farris's symptom testimony under SSR 96-7p; (4) further evaluate Farris's mental impairments in accordance with 20 CFR § 416.920a(c); (5) further consider Farris's RFC; and (6) if warranted, obtain supplemental evidence from a vocational expert. Tr. 45-46. The Appeals Council did not identify specific flaws in the ALJ's credibility analysis, but only instructed the ALJ to evaluate Farris's credibility under 20 CFR § 416.945 and 96-7p. Tr. 45.

This court's jurisdiction is limited to review of the Commissioner's final decisions. 42 USC § 405(g). Remand orders issued by the Appeals Council are not final decisions. Therefore, this court does not have jurisdiction to review the ALJ's compliance with the Appeals Council's

remand order.  The court instead reviews the ALJ's credibility determination and application of SSR 96-7p, discussed more fully below.

However, the court notes that the ALJ's May 2008 decision incorporated additional treatment records submitted by Dr. Hollander-Rodriguez (Tr. 20), expanded the analysis of Farris's credibility (Tr. 19-20), and further evaluated her mental impairments (Tr. 20-21).  The ALJ's subsequent RFC assessment and questions to the vocational expert thus incorporated the additional analysis ordered by the Appeals Council.

## II.     Farris's Credibility

Farris also argues that the ALJ failed to properly follow 20 CFR § 416.929 and apply SSR 96-7p in assessing her credibility.

At the first hearing in August 2006, Farris explained that her activities are limited due to the surgeries on both shoulders, tendonitis in both elbows, double carpel surgeries on both wrists, arthritis in the right hip, muscle spasms in her neck and lower back, migraines, and depression. Tr. 350-51.  She takes a number of medications, including morphine and antidepressants. Tr. 351-52.

She lives with her disabled husband in a rural area without running water or electricity. Tr. 349, 365, 384.  They use a generator and haul water in one-gallon jugs 20 or 30 at a time from a relative's well.  Tr. 365-66.  She testified that she could carry one jug at a time into the house, but could no longer help her husband in the woods dressing game or with the firewood and could no longer play or pick up her granddaughters.  Tr. 354, 366.  She could do beadwork for about 15 minutes at a time before her wrists and arms would start hurting, do crossword puzzles, do some easy cooking, and watch TV.  *Id*.  She could walk one-quarter mile, stand for 30 minutes, sit for 20 minutes, but lays on her couch for more than half the day due to pain.  Tr. 355-56.  She had

8 - FINDINGS AND RECOMMENDATION

trouble lifting 20 pounds and could not lift her arms over her head. Tr. 356, 358. She did not believe that she could work eight hours a day due to her physical problems. Tr. 358.

At the November 2007 hearing, Farris testified that her symptoms were worse. She could stand for only about 10-15 minutes before having to sit down and could walk only a city block Tr. 378-79. She read magazines, could crochet for only five minutes before her hands cramp up, and cooked only once a week. Tr. 381. She did not believe that she could work for eight hours sitting down because she could not focus that long. Tr. 381-82.

### A.    Legal Standards

The Commissioner's regulations instruct the ALJ to evaluate a claimant's symptoms, including pain. 20 CFR § 416.929. The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence." 20 CFR § 416.929(a). The ALJ considers a claimant's statements regarding her symptoms, but they must be accompanied by medical signs and laboratory findings. *Id.*

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue,* 504 F3d 1028, 1036 (9th Cir 2007), citing *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995), citing *Bunnell v. Sullivan*, 947 F2d 341, 345-46 (9th Cir 1991) (*en banc*). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F3d at 1284. The ALJ

9 - FINDINGS AND RECOMMENDATION

may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir 2005).

SSR 96-7p additionally instructs the ALJ to consider numerous factors in assessing a claimant's credibility. The ALJ must give "specific reasons" which are "supported by evidence in the case record." SSR 96-7p, 1996 WL 374186, at *4. The ALJ may consider: (1) an individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medications taken; (5) other treatment the individual receives for the pain or symptom; (6) other measures the individual may take to relieve symptoms (*e.g.*, lying flat on her back to relieve back pain); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id* at *3.

**B.    Analysis**

Because the ALJ made no finding that Farris was malingering, he must give clear and convincing reasons to find Farris not fully credible. He cited the inconsistent reports of her activities of daily living and the failure of the medical record to support a worsening of her symptoms. Tr. 19-20. Farris challenges these reasons and also asserts that the ALJ failed to consider the side effects of her medications.

**1.    Inconsistent Reports of Daily Living**

The ALJ's credibility analysis may cite a claimant's activities of daily living. 20 CFR §§ 416.929(a), 416.929(c)(3)(i); *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *3.

10 - FINDINGS AND RECOMMENDATION

Such activity need not equal work activity to show that the claimant engages in activity inconsistent with the alleged disability. *Lingenfelter*, 504 F3d at 1040. The ALJ also may consider a claimant's contradictory testimony. 20 CFR § 416.929(c)(4); *Smolen*, 80 F3d at 1284. As SSR 96-79 emphasizes, "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, 1996 WL 374186, at *5.

The ALJ first noted that despite Farris's allegations of disability, "information she and her husband initially provided about [her] daily activities indicated [she] is much more capable than alleged." Tr. 19. To support this conclusion, he explained that the initial written function reports stated that Farris could "attend to her personal care without need of assistance, and . . . attend to household chores, including laundry, grocery shopping, bringing in firewood, hanging laundry, and helping her husband process game meat." *Id*, citing Exs. 5E (Tr. 122-30, November 11, 2004 Function Report by Farris's husband), 6E (Tr. 131-38, November 16, 2004 Function Report by Farris), and 3E (Tr. 111-18, October 31, 2004 Function Report by Farris's husband). However, he noted that Farris subsequently "reported that she is not able to perform many of these functions and requires assistance with bathing and grooming." *Id*, citing Exs. 6E (Tr. 131-38, November 16, 2004 Function Report by Farris),[3] 11E (Tr. 154-60, May 6, 2005 Disability Report by Farris), and 12E (Tr. 164-71, June 30, 2005 Function Report by Farris). The ALJ added that: "In addition to these inconsistent reports, [Farris] stated at one point on a form that she engages in bead work and crossword puzzles, yet is barely able to brush her hair and is unable to independently toilet." *Id*, citing Ex. 13E (Tr. 164-71).

---

[3] It appears that the ALJ may have erroneously cited Ex. 6E as a subsequent report.

11 - FINDINGS AND RECOMMENDATION

The ALJ erred by concluding that doing beadwork and crosswords is inconsistent with an inability to brush hair. As Farris explained, she is unable to brush her hair due to the pain of lifting her arms. Tr. 165. Neither beadwork nor crossword puzzles require the lifting of arms. Furthermore, Farris's inability to independently toilet appears limited to the period after her double carpal tunnel surgery. *Id*.

Nonetheless, the ALJ's citation to Farris's inconsistent reports of daily activities is generally accurate. On November 16, 2004, her husband described Farris as having "no problem" with personal care" and as able to perform "some dusting, sweeping, mopping" for "10 to 45 min., depending on pain levels." Tr. 123-24. At the same time, Farris described performing chores, including dishes, laundry, dusting, sweeping, vacuuming, and cooking, and caring for her young granddaughters. Tr. 131-32. With respect to her personal care, she reported that she had to wear button-front shirts and that her husband helped her bathe her legs and shampoo her hair. Tr. 132. Only six months later, after her claim was denied at the initial level, Farris described greater limitations on her personal care. She stated that she sometimes needed help with dressing and undressing, brushing her hair, and performing household chores. Tr. 158. In her Pain Questionnaire completed on June 30, 2005, she stated that she could be up and active "only for a few minutes." Tr. 162. She could no longer cook, perform beadwork, or help with firewood and needed help with dishes and laundry. Tr. 162-63.

Yet shortly before and after June 2005, Farris reported that she engaged in relatively physical daily activities. On March 27, 2005, she told Dr. McKellar that she did "a lot of lifting, bending, twisting, and packing of items in and out of the house." Tr. 250. On November 10, 2005, she reported to Dr. Hollander-Rodriquez that she had increased pain after "having to do quite a bit of heavy work around the house with the snow" and taking chains off of her car.

12 - FINDINGS AND RECOMMENDATION

Tr. 303. On March 20, 2007, she described to Dr. Wenner cutting and carrying wood, but did "not think that has been a particular issue." Tr. 322. Given where and how Farris lives, it is not surprising that she must do heavy physical labor despite her pain. However, given the reports of daily activities that contradicted her claims of more severe limitations, the ALJ could reasonably find Farris not fully credible.

The ALJ also noted that at her second hearing Farris "claimed she was far more limited than she had claimed at the previous hearing." Tr. 19. He explained:

> For example, at the previous hearing, [Farris] stated she could haul buckets of water to her house and was able to walk one-quarter of a mile, yet testified at the recent hearing she no longer hauls water, and can only walk one city block. [Farris] also stated that she can stand for no longer than 15 to 20 minutes, while at the last hearing, alleged she could stand for 30 minutes. Similarly, in her recent testimony, [Farris] stated she cooks only once per week and no longer does bead work or makes jewelry.

*Id*, citing Exs. 4E (Tr. 119-21, November 2004 Pain Questionnaire) and 5E (Tr. 122-30, November 2004 Function Report by Farris's husband).

Farris argues that these changes are due to her worsening symptoms. However, the ALJ properly relied on Farris's inconsistent statements regarding her activities of daily living to conclude that she lacked credibility, and his conclusion is supported by substantial evidence.

///

### 2. Medical Evidence

Second, the ALJ concluded that the "objective medical evidence does not support the extent of [Farris's] allegations nor does the evidence indicate a basis for worsening in function" as Farris claimed. Tr. 20.

13 - FINDINGS AND RECOMMENDATION

Once a claimant has shown an underlying impairment, the ALJ may not reject the claimant's symptom testimony simply because it is not substantiated by the medical evidence. *Bunnell*, 947 F3d at 346.  The ALJ may, however, note the medical evidence of record in conjunction with other credibility findings.  20 CFR § 416.929(c)(2); *Smolen*, 80 F3d at 1284. Here the ALJ may cite physician opinions and observations.  *Id.*  "[A] report of negative findings from the application of medically acceptable clinical and laboratory diagnostic techniques is one of the many factors that appropriately are to be considered in the overall assessment of credibility."  SSR 96-7p,  1996 WL 374186, at *6.

The ALJ's credibility discussion considered Dr. Hollander-Rodriguez's treatment notes documenting Farris's reports of pain in her shoulders, neck, and elbows, Dr. Wenner's carpal tunnel release surgery (and the absence of records of any neurological test results), and examining physician Dr. McKellar's report citing Farris's reported activities of daily living and concurrent normal x-rays.  Tr. 20, citing Ex. 3F, 1F at 21-22 (Tr. 250-55, 207-08).  In addition, in November 2006, Dr. Hollander-Rodriquez stated that prescription medications controlled Farris's chronic pain and improved her function ( Tr. 328) and the April 2007 MRI showed no evidence of rotator cuff tear.  Tr. 318.  The record fully supports these citations to Drs. Hollander-Rodriguez (Tr.193-95,  203, 207-08, 303-07, 324-39), Wenner (Tr. 245-49), and McKeller (Tr. 250) as indicating a level of functional capacity above what she claimed.   Thus, the ALJ properly relied on the lack of objective medical evidence in the record to find Farris not fully credible.

### 3. Medication Side Effects

Finally, Farris alleges, without any explanation or citation to the record, that the ALJ failed to consider the side effects of her medication in accordance with  20 CFR § 416.929(c)(3)(iv) and  SSR 96-7p.

14 - FINDINGS AND RECOMMENDATION

Farris did not testify to any negative side effects from her medications at either of her hearings before the ALJ. Additionally, the record shows that, in response to a DDS questionnaire asking if she has medication side effects, Farris wrote in November 2004: "Don't have any I'm aware of." Tr. 120. Farris also denied medication side effects to Dr. Hollander-Rodriguez on August 11, August 31, and September 29, 2004. Tr. 192-93, 195. Finally, Dr. Hollander-Rodriguez noted on August 18, 2005, that Farris reported withdrawal symptoms when she ran out of MS Contin (Tr. 307), but on September 21, 2005, reported no side effects from MS Contin "as long as she uses marijuana with it." Tr. 305. On July 6, 2006, Dr. Hollander-Rodriguez again noted that Farris is "not noticing" any side effects of her medication. Tr. 334.

The record thus supports the Commissioner's submission that Farris denied experiencing medication side effects.

### C.     Conclusion

In sum, Farris has failed to show that the ALJ improperly applied the Commissioner's regulations and SSR 96-7p in his credibility analysis. Because the ALJ's credibility findings are based upon the correct legal standards and supported by substantial evidence, the Commissioner's decision should be affirmed.

## RECOMMENDATION

For the reasons set forth above, the Commissioner's decision that Farris did not suffer from disability and is not entitled to benefits under Title XVI of the Social Security Act should be AFFIRMED, and the Complaint should be dismissed.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due August 31, 2009. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 14th day of August, 2009.

                                                   s/ Janice M. Stewart_____
                                                   Janice M. Stewart
                                                   United States Magistrate Judge